**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| Plaintiff, | 1:04-cr-00005-4 |
| | 1:08-cv-00113 |
| v. | |
| **DANIEL FLEMING,** | |
| Defendant. | |

TO:  Alphonso G. Andrews, Esq., AUSA
 Joycelyn Hewlett, Esq., AUSA
 Daniel Fleming, *Pro Se*, No. 07043-094
  FPC Montgomery
  Federal Prison Camp
  Maxwell Air Force Base
  Montgomery, AL 36112

**REPORT AND RECOMMENDATION**

THIS MATTER is before the Court upon the Order (ECF No. 7) of Chief Judge Wilma A. Lewis in 1:08-cv-00113 referring Defendant Daniel Fleming's *pro se* Motion under 28 U.S.C. § 2255[1] to Vacate Conviction and Set Aside Sentence (ECF No. 1189)[2] to the undersigned for a report and recommendation.  The government filed responses in opposition to the motion (ECF Nos. 1291, 1313).  The time for filing a reply has expired.  For the reasons that follow, the undersigned recommends that said Defendant's motion be denied.

---

[1] All citations to the United States Code are to the electronic version that appears in Lexis.
[2] All ECF document numbers are as recorded in 1:04-cr-00005-4, unless otherwise noted.

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 2

## I. BACKGROUND

On April 4, 2003, Daniel Fleming (hereinafter Defendant) and nine other individuals were arrested on the charge of Conspiracy to Possess with Intent to Distribute Cocaine. Warrant of Arrest (ECF No. 9), entered April 10, 2003. Arrests were pursuant to warrants, probable cause issuing from the statement of DEA Agent Joseph Tokarz who had been conducting an investigation into the drug conspiracy since June, 2001. Complaint with Affidavit (ECF No. 1), entered April 7, 2003.

Soon thereafter, an indictment was filed under which Defendant was charged with eleven counts related to the importation, possession, and distribution of narcotics and with one count of money laundering. Indictment (ECF No. 10), entered April 11, 2003. He and five of his co-defendants were tried by jury in the summer of 2005. *United States v. Hendricks*, Criminal No. 04-00005 (2005).

At the conclusion of the trial, Defendant was convicted of drug conspiracy, possession with intent to distribute a controlled substance, distribution, importation, and money laundering. Verdict (ECF 788), entered August 16, 2005. He was sentenced on May 5, 2006, to serve 15 years. Judgment and Commitment (ECF No. 1005), entered June 30, 2006. His conviction was affirmed by the Third Circuit. *United States v. Fleming,* 287 Fed. App'x 150 (3d Cir. 2008).

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 3

## II. LEGAL STANDARD

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002) (citing *Davis v. United States*, 417 U.S. 333, 343 (1974)). As the *Davis* Court notes, "[H]istory makes clear that § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Davis*, 417 U.S. at 343. However, not every asserted error of law can be raised in a § 2255 motion. *Id*. at 346.

In order to prevail on a § 2255 motion, a movant must show one of the following: 1.) the sentence was imposed in violation of the Constitution or the laws of the United States; 2.) the court was without jurisdiction to impose the sentence; 3.) the sentence was in excess of the maximum authorized by law; 4.) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). If the court finds any of these grounds, the court must vacate the judgment, discharge or resentence the petitioner, or grant the petitioner a new trial as appropriate. *Id*. § 2255(b).

A § 2255 petition is not a substitute for an appeal. *Hodge v. United States*, 554 F.3d 372, 378-79 (3d Cir. 2009) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)). Thus, the general rule is that a petitioner "has procedurally defaulted all claims that he neglected to raise on direct appeal." *Hodge*, 554 F.3d at 379 (citation omitted); *Massaro v. United States*, 538 U.S. 500, 504 (2003). Moreover, a § 2255 petition may not "be used to relitigate

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 4

matters decided adversely on appeal." *Government of the Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985) (citation omitted). However, a petitioner properly raises ineffective assistance of counsel arguments under § 2255 rather than on direct appeal. *See, e.g., Massaro*, 538 U.S. at 504 (explaining it is "preferable" that such claims be considered on collateral review where the record for such claims may be properly developed); *accord United States v. Garcia*, 516 F. App'x 149, 151 (3d Cir. 2013) ("It is well-settled that this Court ordinarily does not review claims of ineffective assistance of counsel on direct appeal.") (citing *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003)).

"A court may dismiss a motion to vacate without . . . holding an evidentiary hearing when it is clear from both the motion and the record that the movant is not entitled to relief." *United States v. Delbridge*, 504 F. App'x 145, 148 (3d Cir. 2012); 28 U.S.C. § 2255(b). Further, a court may decide a § 2255 "motion without requiring the production of the prisoner at the hearing." 28 U.S.C. § 2255(c). A petitioner's *pro se* pleading is construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (explaining that the liberal construction accorded a *pro se* litigant's pleadings does not include the rendering of substantive legal advice).

### III. DISCUSSION

To succeed on an ineffective assistance of trial counsel claim a movant must show both that 1.) counsel's representation was deficient and that 2.) the deficient performance

"prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Regarding the "deficient" prong, a movant must demonstrate that counsel "made errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. As for the prejudice prong, a movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.[3] The movant bears the burden of establishing his ineffective assistance of counsel claims by a preponderance of the evidence. *United States v. Serrano,* 798 F. Supp. 2d 634, 641 (E.D. Pa. 2011) (citing *Wright v. United States,* 624 F.2d 557, 558 (5th Cir. 1980)). A movant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance is highly deferential, and a petitioner must overcome a "strong presumption" that counsel's strategy and tactics "fall[ ] within the wide range of reasonable professional assistance." *Id*. at 689. In addition, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to

---

[3] A court has discretion to dispose of a claim at either prong, as there is no required order to the *Strickland* inquiry. *Strickland,* 466 U.S. at 697 (explaining a court need not "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "address both components of the inquiry if the defendant makes an insufficient showing on one").

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 6

constitute ineffective assistance under the Constitution." *Id*. at 691-92. Thus, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010).

In the matter at bar, Defendant asserts that his conviction and sentence are unconstitutional due to ineffective assistance of counsel. Defendant claims that his attorney, Leonard Francis, was ineffective for failing to call alibi witnesses, missing a filing deadline regarding witnesses, failing to present an expert witness, failing to object to "missing witness" testimony, and failing to object to a "misidentification." Motion to Vacate (ECF No. 1189) at 14. Defendant also asserts that his attorney used cocaine at a party they both attended and that a conflict arose due to his counsel's "friendly and professional relationship over 15 years" with a government witness. Motion to Show Cause and Submission of Additional Claims (ECF No. 1307) at 2.

### A. Witnesses

Defendant asserts ineffective assistance due to counsel's failure to call alibi witnesses. His claim stems from the fact that his attorney missed a deadline regarding these witnesses. While it is true that the court could have barred the proposed witnesses based on the missed deadline alone, the record shows that it did not.

The court heard from both the government and the defense regarding the efficacy of the proposed alibis and whether, given the fact that Attorney Francis had missed the related deadline, the witnesses would be allowed to testify. Ultimately, the court never

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 7

ruled on the issue (though the government argued persuasively against allowing it). And, while two people did testify about Defendant's character, neither witness provided an alibi. Trial Transcript at 94-99, *United States v. Hendricks*, No. 04-cr-00005 (D.V.I. July 28, 2005); *Id.* at 11-13 (July 29, 2005).

It appears from the record that Defendant's alibi witnesses intended to testify regarding Defendant's whereabouts on March 1, 2003. Trial Transcript at 6-8, *United States v. Hendricks*, No. 04-cr-00005 (D.V.I. July 28, 2005); *Id*. at 13 (July 29, 2005). Even without the alibi witnesses to testify as to this day, the jury returned "not-guilty" verdicts on Counts Seven, Eight, Nine, and Ten, the only counts to specify the singular dates of March 1, 2003 and March 2, 2003. Verdict (ECF Nos. 777, 788), entered August 16, 2005. All other Counts under which Defendant was charged and convicted provided a range of dates or a non-specific date, such as "on or about March, 2001." Superseding Indictment (EFC No. 544), entered October 1, 2004 at 7.

Defendant does not provide specifics as to the persons, places, dates, and times of his proposed alibi witnesses. Nor does he claim actual innocence. Even if the alibi witnesses had been allowed to testify, it is not clear that their testimony would have made any difference. The government built its case on direct and circumstantial evidence gathered over the course of a multi-year investigation that included the use of audio and video surveillance, wiretaps, and the cooperation of confidential informants. In addition to witness testimony, evidence presented to the jury included audio tapes with Defendant's

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 8

voice and video that showed Defendant, his home, and his place of employment. Because there is no evidence that the result of the proceeding would have been different but for the testimony of alibi witnesses, the court must find that Defendant was not prejudiced.

### B. Hector Rivera

Defendant alleges ineffective assistance due to his attorney's failure to have recordings and statements made by Hector Rivera stricken from the record.

The recordings and other alleged testimonial statements made by Hector Rivera were vigorously challenged: by motion during trial (Trial Transcript at 229-245, *United States v. Hendricks*, No. 04-cr-00005 (D.V.I. July 26, 2005)); by post-trial motion (Motion for Judgment of Acquittal (ECF No. 908)); and by appeal (*United States v. Hendricks*, 395 F.3d 173 (3d Cir. 2005)). In 2008, the Third Circuit addressed the issue again, writing:

> One of the government's planned witnesses, Hector Rivera, who was originally involved in the narcotics conspiracy with the co-defendants and became a confidential informant ("CI"), provided the government with taped conversations, videos of drug transactions, and information leading to a wiretap of the co-defendants. Prior to trial, Rivera was murdered by an unknown person. The District court then denied the government's motion *in limine* seeking to admit conversations involving Rivera, based on its reading of *Crawford v. Washington*, 541 U.S. 26 (2004). The government appealed that order and we reversed. See *United States v. Hendricks*, 395 F.3d 173 (3d Cir. 2005) ("*Hendricks I*"). The case proceeded to trial and the jury convicted Hendricks, Robinson, and Fleming of three conspiracy counts: to import drugs, to distribute drugs, and to launder money. In addition, Hendricks and Fleming were convicted of narcotics possession and distribution, and Hendricks was convicted of three additional counts of narcotics possession and distribution.

*United States v. Fleming*, 287 Fed. App'x 150, 152 (3d Cir. 2008).

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 9

Reviewing the question of Hector Rivera's recordings *de novo*, the Third Circuit found that the video and audio recordings made by Hector Rivera were not testimonial, were admissible under Federal Rules of Evidence 801(d)(2), and were rightly admitted by the district court. *Id.*

Not only is this issue effectively barred, having been twice raised on appeal, the evidence is clear that defense counsel's performance was not deficient.

### C. Misidentification

Defendant claims ineffective assistance due to counsel's failure to have an alleged misidentification of Defendant suppressed. During trial, Agent Tokarz was questioned about this "misidentification":

BY ATTORNEY SULZBACH:

> Q. Now, when you first identified Daniel Fleming in one of your reports, you were doing that based off of a description that you received from Anthony Ottley, correct?
>
> A. Yes, that's correct.
>
> Q. And Anthony Ottley told you that Daniel Fleming was a light-skinned male?
>
> A. Yes, that's correct.
>
> Q. And then you mistakenly –
>
> MR. FRANCIS: Objection in regards to "mistakenly," Your Honor.
> THE COURT: Overruled.

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 10

> Q. And then you mistakenly took "light-skin male" for "Caucasian male?"
>
> A. I did.
>
> Q. Now, did there come a time when you learned the correct description of Daniel Fleming?
>
> A. Not really. In December of 2002, I was able to get a driver's license photo of Daniel Fleming and I put that in a report. And I was able to identify his date of birth and Social Security Number, stuff like that. That report, he was, listed him as a Hispanic male.
>
> Q. According to the driver's license?
>
> A. Yes. Well, actually it doesn't say it on the driver's license. And I don't - - to be honest, I don't remember where the Hispanic came from. I have tried to pull up his DMV stuff but I haven't been able to.
>
> Q. So at some point, once you actually - - besides talking to your witnesses, once you actually got to see Daniel Fleming, you corrected your reports?
>
> A. I don't know if I ever corrected the reports. But clearly, the person I had in the driver's license photo was that of Daniel Fleming, and that's the same person that I arrested.
>
> Q. Okay. How do you know that? How are you so certain of that?
>
> A. I arrested him and he matches the picture in his driver's license photo.
>
> Q. All right.
>
> A. And his name is Daniel Fleming.
> And when I arrested him, I asked him, Are you Daniel Fleming?"
> And he said, "Yes."

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 11

Trial Transcript at 160-161, *United States v. Hendricks*, No. 04-cr-00005 (D.V.I. July 27, 2005).

The mere fact that Agent Tokarz made a mistake in his report or that Attorney Francis was unable to have the "misidentification" suppressed, without more, is insufficient to conclude that counsel's performance fell below the standard of reasonable professional assistance. Defendant does not claim actual innocence: He has not said, "That is not me." His only complaint is that he was "misidentified." Nor can he demonstrate prejudice from his attorney's inability to convince the court to suppress this so-termed misidentification. Finally, it bears repeating that the government presented audio and video recordings by which the jury could make their own determination as to whether the accused was indeed the Daniel Fleming sitting in the courtroom. On this issue, his arguments simply fail.

### D. Expert Witness

Defendant claims ineffective assistance of counsel because an expert witness was not presented to testify to a medical condition that allegedly prevents Defendant from lifting and carrying heavy objects. Motion to Vacate (EFC 1189) at 8.

The jury found that the Defendant participated in a conspiracy and aided and abetted. Regarding the amount, or weight, of the drugs attributed to Defendant, the judge instructed the jury:

> For the purposes of determining the amount of drug for which a defendant is responsible, a person who has been found guilty by you of conspiracy to distribute an illegal drug, you are to determine the amount of drug that

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 12

> defendant knew, had actual knowledge of, being part of the conspiracy and/or the amount of illegal drug that the defendant reasonably foresaw being obtained or utilized for purposes of distribution by the conspiracy, by coconspirators within the conspiracy.
>
> A person who may join a conspiracy that's already existing may not know the amount of illegal drugs distributed before he joined the conspiracy. But knowledge of what were the aims and goals of the conspiracy, and knowledge of the actions of the coconspirators as may have existed in the past, may inform reasonably the coconspirator as to what reasonably to expect in the future.
>
> So, for conspiracy purposes, in determining amount, you look at what the defendant actually knew about, and what the person reasonably could foresee. "Foresee" means looking into the future.
>
> For the actual distribution charges, called substantive counts, the nonconspiracy counts, you have found that a defendant there either acted knowingly to bring about the possession with the intent to distribute, or that person aided and abetted.
>
> Under aiding and abetting, you'll recall that a person who aids and abets is as responsible as the person who is the principal actor. So the reasonable foreseeability test does not apply to the substantive counts.
>
> Under aiding and abetting, as you will recall, a person must be shown to know of the criminal venture and then participate in it in some way so as to try to bring it about.
>
> And so such a person who is an aider and abettor, knowing what's going down, becomes responsible for the criminal act as if that person had physically performed the act, the physical act of obtaining drugs or distributing drugs, as the case may be.

Trial Transcript at 7-9, *United States v. Hendricks*, No. 04-cr-00005 (D.V.I. Aug. 4, 2005).

Attorney Sulzbach's guidance was more direct: "The court has instructed you, and will instruct you, it doesn't matter whether . . . Daniel Fleming . . . ever put their hands on

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 13

any drugs, personally touched drugs, possessed drugs, distributed drugs." Trial Transcript at 50-51, *United States v. Hendricks*, No. 04-cr-00005 (D.V.I. Aug. 4, 2005).

Expert testimony that Defendant could not have lifted or carried something due to an injury or disability was unnecessary. A finding by the jury that one of the coconspirators was responsible for five or more kilograms of cocaine meant that the jury could find that all members of the conspiracy were responsible for five or more kilograms of cocaine.

Defendant asserts that his expert witness would have testified that it was impossible for Defendant to lift and carry over one hundred kilograms of cocaine. Motion to Vacate (ECF 1189) at 8. But the government only sought to prove that Defendant carried 6 kilograms of cocaine. Evidence that Defendant worked as a handyman, that he repaired air conditioners, that he engaged in physical activity related to his job, meant that the jury had evidence upon which they could reasonably conclude that regardless of injury or disability, Defendant could have engaged in the activity alleged: carrying 6 kilos (approximately 13 pounds) of cocaine. Further, the jury was able to make their own assessment of Defendant's physical capabilities based on their viewing of the video tapes entered into evidence.

Defendant submits that he was in a serious car accident and as a result he has had several surgical procedures to re-build his hip. These facts do not persuade the court that the jury would have come to a different conclusion if only they had heard from an expert.

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 14

Therefore the court must find that the absence of expert testimony as to Defendant's medical condition did not prejudice his defense.

### E. Drug Use

Defendant asserts that he did not receive effective assistance of counsel because Attorney Francis used cocaine at a party they both attended. "Under *Strickland* the fact that an attorney used drugs is not, *in and of itself,* relevant to an ineffective assistance claim. The critical inquiry is whether, for whatever reason, counsel's performance was deficient and whether that deficiency prejudiced the defendant." *Berry v. King*, 765 F.2d 451, 454 (5th Cir. 1985) (italics in original); *accord United States v. Washington*, 869 F.3d 193, 204 (3d Cir. 2017) ("[I]n order for an attorney's alcohol addiction to make his assistance constitutionally ineffective, there must be specific instances of deficient performance attributable to alcohol.") (quoting *Frye v. Lee*, 235 F.3d 897, 907 (4th Cir. 2000)).

Defendant points to no specific instances in which Attorney Francis's performance during trial was deficient because of drug use. Failing a showing that "any impairment caused specific errors during trial" or that any harm occurred due to the alleged drug use, the court must reject Defendant's contention that his attorney's alleged drug use resulted in ineffective assistance of counsel. *Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993). *See also*, *Tucker v. United States*, 2012 U.S. Dist. LEXIS 136473, at *35-37 (S.D.N.Y. September 24, 2012) (explaining that "[ ] even where it is established or assumed that trial counsel had an ongoing substance abuse problem, the petitioner must still demonstrate

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 15

that: (1) counsel's performance fell below an 'objective standard of reasonableness' under 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' from the alleged dereliction in counsel's performance.").

### F. Conflicts

Defendant claims ineffective assistance of counsel due to a conflict arising from Attorney Francis's prior personal and professional relationship with government witness Rudy Clarke.

In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan* 446 U.S. 335, 348 (1980). Defendant has failed to demonstrate an actual conflict, nor has he shown that the outcome of his trial would have been different but for the alleged conflict.

### G. Prejudice

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691 (quoting *Cf. United States v. Morrison,* 449 U. S. 361, 449 U. S. 364-365 (1981)). The record in this case does not demonstrate prejudice. The jury received evidence, independent of the alleged errors, upon which they could have returned a guilty verdict.

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 16

As has been shown herein, the court reviewed the record and found no evidence that the result of the trial would have been different but for counsel's alleged errors. Additionally, Defendant failed to present any evidence establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[4]

### H. Sentence

Defendant argues that his sentences on Counts 1, 2, 3, and 11 were erroneous due to ineffective assistance of counsel and that there was no credible evidence to support the jury's findings in terms of the amount of cocaine.[5] Motion (ECF No. 1189) at 16. Defendant further argues that his sentence on Count 12 should be vacated due to ineffective assistance of counsel, because no evidence was presented to support the elements of the crime,[6] and because the judge did not follow the formula set forth in 18 U.S.C. § 3553(a). Motion to Vacate (ECF No. 1189) at 15.

---

[4] "A reasonable probability is a probability sufficient to undermine confidence in the outcome," and "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

[5] Evidence presented to the jury included that in March 2001, Defendant handed Witness Ottley six bricks (approximately 6 kilograms) of cocaine. Trial Transcript at 234-237, *United States v. Hendricks*, No. 04-cr-00005 (D.V.I. July 18, 2005). In closing arguments Assistant U.S. Attorney Sulzbach told the jury: "You heard evidence from Anthony Ottley that he sold six and a half kilos of cocaine to Christopher Schoenbohm and Hector Rivera . . . when it came time to actually hold the drugs, deliver the drugs, it was none other than Daniel Fleming who showed up to deliver the drugs." *Id.* at 23 (August 1, 2005). In the drug amounts and forfeiture proceedings Attorney Sulzbach told the jury: "Rudy Clark told you about eight (kilos). David Peltier told you about 18 in just one of the four trips. You have a conversation with Elroy Dowe and Hector Rivera for eight. We brought you four actual kilos. . . . And that's just some of the evidence, ladies and gentlemen, but it certainly has shown that there are at least five kilos involved." *Id.* at 51 (August 4, 2005).

[6] Evidence presented to the jury regarding Defendant's involvement in money laundering included Defendant's signature on the signature card from the bank, transaction documents, and witness testimony. Trial Transcript at 122-23, *United States v. Hendricks*, No. 04-cr-00005 (D.V.I. July 26, 2005). Witness

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 17

At his sentencing hearing, Defendant was represented by Attorney Francis and stand-by counsel Attorney Judith Bourne. Throughout Defendant's sentencing hearing arguments made by Attorney Francis and statements made by Defendant appear to have influenced the judge's decision to sentence Defendant to 180 months, a sentence below the Federal Sentencing Guidelines.[7] For example, the government argued that the money laundering count was sophisticated. After Attorney Francis's rebuttal, the court found that even though there was a sophisticated money laundering scheme (and Defendant was convicted of conspiracy) Defendant's level of participation in the scheme was not one of sophistication. The court thereby eliminated the two-level increase for sophistication and adjusted the sentencing level downward to level 38. Sentencing Transcript at 12, *United States v. Fleming*, No. 04-cr-00005 (D.V.I. May 5, 2006).

After hearing from the government, from defense counsel, and from Defendant, the Court sentenced Defendant to 15-year sentences on Counts 1, 2, 3, and 11 to run concurrently with each other and a 10-year sentence on Count 12 to run concurrently with the 15-year sentences. Judgment and Commitment (ECF 1005), entered June 30, 2006. The Court also granted full credit toward his prison term for all time that Defendant spent in custody awaiting disposition of the trial and the sentence. Sentencing Transcript at 47,

---

testimony included that in March 2001 Defendant loaded boxes and duffle bags into Ottley's plane. After flying Hendricks and the cargo loaded by Defendant, Ottley testified that he learned there was at least $600,000 on his plane during that flight. Trial Transcript at 212-218, *United States v. Hendricks*, No. 04-cr-00005 (D.V.I. July 18, 2005).

[7] United States Sentencing Commission Guidelines Manual (2005).
https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2005/manual/GL2005.pdf. Accessed January 5, 2018.

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 18

*United States v. Fleming*, No. 04-cr-00005 (D.V.I. May 5, 2006).  Given that Defendant was free on bond from the time of his arrest in 2003 until his sentencing in 2006, this would have amounted to a significant amount of jail credit.

The court asked if anyone had objections about or changes to the presentence investigation report.  Neither Defendant nor his counsel objected to the report nor the offense level of 40, which, as noted above, the Court then lowered to 38.  Defense counsel and Defendant were also permitted to address the jury's findings and to speak to Defendant's character.  In pronouncing sentence, the court acknowledged applying the standards of § 3553(a):

> I've considered the nature and circumstances of the offenses, the history, the characteristics of the defendant, I've read the letters of recommendation made on his behalf.
>
> The sentence imposed is one that conveys the seriousness of the offense to the public. It is consistent with the public's respect for law. It is adequate to deter criminal conduct in others and in the defendant. It is one that is sufficient to protect the public from further crimes by this defendant, and it is a sentence that is consistent with the defendant's need to serve his debt to society and be able to return to this community to do lawful work as a citizen of this community.

Sentencing Transcript at 44-45, *United States v. Fleming*, No. 04-cr-00005 (D.V.I. May 5, 2006).

The court listened to Defendant's allocution, defense and government arguments, then stated:

> The jury's decisions are inconsistent with the defendant's allocution, and while the court has heard that, and it's passionate, the jury considered a lot of

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 19

> information, which the court finds and has found to justify the court's decision.
>
> The sentence imposed is a reasonable sentence under all of the circumstances. The evidence in the case is consistent with Mr. Fleming being used by Mr. Hendricks, and there is a quantum of information consistent with his knowledge of drug activity and that he was being used for a drug purpose of Mr. Hendricks.
>
> Consider, for example, the testimony of Mr. Ottley. Consider the fact that Mr. Fleming was trusted with large amounts of cocaine. Those are consistent with knowledge, not ignorance.
>
> The sentence is a sentence that has considered the Sentencing Guidelines, and the court has considered Mr. Fleming's level of involvement as being less than that which is punishable in accordance with the Guideline range.

Sentencing Transcript at 43-44, *United States v. Fleming*, No. 04-cr-00005 (D.V.I. May 5, 2006).

On May 9, 2016, the district court denied Defendant's Motion for Sentence Reduction and Retroactive Application of Amendment 782 of the Sentencing Guidelines, finding that Defendant's sentence of 180 months is "eight (8) months less than the amended minimum guideline range of 188-235 months applicable to him under Amendment 782." Order (ECF No. 1389), entered May 9, 2016 at 1.[8]

The record shows that Defendant was not prejudiced by ineffective assistance of counsel at his sentencing. The court calculated the sentence according to the federal

---

[8] Defendant's release date is currently set for September 17, 2018, https://www.bop.gov/inmateloc/. Accessed January 2, 2018.

*United States v. Fleming*
1:04-cr-00005-4; 1:08-cv-00113
Report and Recommendation
Page 20

guidelines, considered the factors in § 3553(a), listened to and considered the arguments of the government, defense counsel, and Defendant and applied those in making its decision.

## IV. CONCLUSION

Based upon the foregoing, IT IS HEREBY RECOMMENDED that Petitioner Daniel Fleming's Motion under 28 U.S.C. § 2255 to Vacate Conviction and Set Aside Sentence (ECF No. 1189) be **DENIED** without an evidentiary hearing;[9] and

it is further recommended that a certificate of appealability be **DENIED**.[10]

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

ENTER:

Dated: January 12, 2018         /s/ George W. Cannon, Jr.
                                GEORGE W. CANNON, JR.
                                MAGISTRATE JUDGE

---

[9] The question of whether to order an evidentiary hearing when considering a motion to vacate a sentence under § 2255 "is committed to the sound discretion of the district court." *Government of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989). A § 2255 evidentiary hearing "is unnecessary when the 'files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Padilla–Castro,* 426 F. App'x 60, 63 (3d Cir. 2011) (quoting 28 U.S.C. § 2255(b)). The record in this case conclusively shows that Fleming is not entitled to relief.

[10] When a district court issues a final order on a § 2255 motion, it must make a determination whether it will permit a certificate of appealability. 3d Cir. L.A.R. 22.2; Fed. R. App. P. 22(b)(1). A district court will issue a certificate of appealability only upon a finding of a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, the record fails to show a violation of Fleming's constitutional rights. Accordingly, a certificate of appealability should be denied.